UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAQUEL HIDALGO-SANCHEZ, | ) | CASE NO.: 3:26-cv-00976 |
| | ) | |
| Petitioner, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| KEVIN RAYCRAFT, Acting Field Office | ) | **MEMORANDUM OPINION** |
| Director of Enforcement and Removal | ) | **AND ORDER** |
| Operations, Detroit Field Office, | ) | |
| Immigration and Customs | ) | |
| Enforcement, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

Before the Court is Petitioner Raquel Hidalgo-Sanchez's habeas petition pursuant to 28

U.S.C. § 2241.  (Doc. 1.)  Respondents are Kevin Raycraft, Field Office Director of the

Cleveland Field Office for Immigration and Customs Enforcement ("ICE"); Markwayne Mullin,

Secretary of the United States Department of Homeland Security; and Todd Blanche, Acting

United States Attorney General (together "Respondents").  (*Id.*)  Respondents opposed the

Petition.  (Doc. 4.)  Petitioner replied.  (Doc. 5.)  For the reasons stated herein, the Petition is

GRANTED in part and DENIED in part.

I.      BACKGROUND

Petitioner is a citizen of Mexico.  (Doc. 1 at 3, ¶ 13.)[1]  She entered the United States

without inspection or parole.  (*Id.* at 1, ¶ 1.)  The Petition does not state when she entered the

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document
and PageID# rather than any internal pagination.

United States.  It only states Petitioner lived in the United States for "many years."  (*Id.* at 1, ¶ 2.)  While residing in the country, Petitioner has pending applications for asylum, withholding of removal, and cancellation of removal.  (*Id.* at 2, ¶ 7.)  On January 31, 2026, ICE arrested Petitioner.  (*Id.* at ¶ 5.)  Petitioner was issued a Notice of Appear charging her as removable.  (Doc. 1-2.)  She is detained at the Corrections Center of Northwest Ohio.  (Doc. 1 at 2, ¶ 6.)

On April 24, 2026, Petitioner filed this Petition, arguing her continued detention without a bond hearing violates the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and the Due Process Clause of the Fifth Amendment.  (*Id.* at 14-16, ¶¶ 69-89.)  The crux of the dispute is Respondents designation of Petitioner as mandatorily detained pursuant to Section 1225 of the INA.  Before July 8, 2025, noncitizens in the United States were viewed as being subject to Section 1226, which allows for bond hearings and the potential for release during the pendency of removal or asylum proceedings.  Since July 8, 2025, noncitizens in the United States are viewed as being subject to Section 1225, which mandates detention during removal proceedings in nearly every instance with no bond hearing.  Petitioner seeks immediate release, or in the alternative, an order requiring Respondents to provide Petitioner with a bond hearing pursuant to Section 1226.  (*Id.* at 17, Prayer for Relief.)  Respondents opposed the Petition.  (Doc. 4.)[2]

---

[2] Respondents assert jurisdictional limits as well as Petitioner's need to exhaust administrative remedies.  The Court has previously rejected similar jurisdictional and exhaustion arguments.  *See Gu v. Noem*, No. 26-cv-36, 2026 WL 621356, 2026 U.S. Dist. LEXIS 45134, at *4 (N.D. Ohio Mar. 5, 2026).  The Court does the same here.

## II.     ANALYSIS

Any "individual detained within the United States" may seek a writ of habeas corpus. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).  Habeas relief is available where a person's custody violates "the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

### A.        Immigration and Nationality Act

The central question is the basis for Petitioner's detention.  (Doc. 1 at 6, ¶ 30.) Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225 of the INA.  (Doc. 4 at 27-28.)  Petitioner argues her detention was an exercise of discretionary enforcement authority under 8 U.S.C. § 1226.  (Doc. 1 at 8, ¶ 40.)  Under Section 1226, Petitioner argues she is entitled to a bond hearing.  (*Id.* at 12, ¶ 59.)  Because Respondents' interpretation of Section 1225 runs counter to well-established canons of statutory construction, their contention that Section 1225(b)(2)(A) authorizes Petitioner's detention without a bond hearing lacks merit.[3]

The "starting point" for any statutory interpretation question "is the statutory text." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003); *see also J. B-K. by E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 48 F.4th 721, 726 (6th Cir. 2022).  The Court "must give effect to the clear meaning of statutes as written."  *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414, 137 S. Ct. 1002, 197 L. Ed. 2d 354 (2017); *see also Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022).  The words in the statute are given their "ordinary, contemporary, [and] common meaning" while also being assessed in context

---

[3] In its return of writ, Respondents acknowledge this Court's recent decision in *Gu*, 2026 WL 621356, 2026 U.S. Dist. LEXIS 45134, but reiterate their arguments regarding the mandatory detention of noncitizens.

with the remaining statutory language.  *Biden*, 23 F.4th at 603 (citations and quotations omitted).

Section 1225(a)(1) defines "an applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States[.]"  Section 1225(b)(2)(A) states: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  In this way, three things must be demonstrated for Section 1225(b)(2)(A) to apply: the person must be (1) "an applicant for admission"; (2) "an alien seeking admission"; and (3) "not clearly and beyond a doubt entitled to be admitted."

An "applicant for admission" is defined in Section 1225(a)(1).  An "alien seeking admission" is not defined anywhere in the INA.  Respondents urge that every "applicant" is also "seeking admission."  This argument is unpersuasive.

First, for Section 1225(b)(2)(A) to apply, Respondents must show that the person is "an applicant for admission."  If demonstrated, Respondents must then show the person is also "seeking admission."  For the Court to be persuaded by Respondents' assertion that these two considerations are one in the same would require it to disregard its own mandate to give effect to every clause, word, and provision of a statute.  *See TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001) (citing *Duncan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001)).  The statute plainly states that two things must be true—the person is an applicant and they are seeking admission.  By its language, Congress has determined an applicant is distinct from someone who may also be seeking admission.  "The canon against surplusage can be meaningful when a competing interpretation would avoid superfluity."  *Bufkin v. Collins*, 604 U.S. 369, 387, 145 S. Ct. 728, 221 L. Ed. 2d 192 (2025).  Such is the case here.

Second, Congress' chosen language is also notable. "Seeking" implies action. *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025). It suggests something that one is in the process of doing. *Id.* Being an applicant is passive. The action is complete, and the waiting period has begun.

Third, the Court considers the titles chosen for each section. While titles cannot override plain words in a statute, referring to titles can be "tools available for resolution of a doubt." *Spurr v. Pope*, 936 F.3d 478, 488 (6th Cir. 2019). Section 1225 is titled "[i]nspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The use of "arriving aliens" strongly corroborates that it applies to aliens who are in the act of *arriving* in the United States. Meanwhile, Section 1226 is titled "[a]pprehension and detention of aliens." That title appears to apply directly to Petitioner, an alien apprehended and detained. *See Martinez-Elvir v. Olson*, 807 F. Supp. 3d 725, 737 (W.D. Ky. 2025) (the title's "use of 'arriving aliens' to describe the noncitizens to whom the statute applies strongly suggests that § 1225 pertains to noncitizens first entering the United States."); *see also Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, 2025 U.S. Dist. LEXIS 175767, at *13 (E.D. Mich. Sep. 9, 2025) ("The use of 'arriving' to describe noncitizens strongly indicates that the statute governs the *entrance* of noncitizens to the United States."); *Edahi v. Lewis*, No. 25-cv-129, 2025 WL 3466682, 2025 U.S. Dist. LEXIS 233006, at *18 (W.D. Ky. Nov. 27, 2025) ("'arriving' supports the notion that the statute governs 'arriving' noncitizens, not those present already").

Fourth, the Court's determination here is entirely consistent with *Jennings v. Rodriquez*, 583 U.S. 281, 138 S. Ct. 830, 200 L. Ed. 2d 122 (2018). There, the Supreme Court recognized Section 1226(a) as "the default rule" for "aliens already present in the United States," while

Section 1225 is paramount at "the Nation's borders and ports of entry . . . ." *Id.* at 281.

Lastly, recent congressional action confirms the Court's interpretation of Section 1225. As the *Martinez-Elvir* court explained, the Laken Riley Act amended portions of the INA to exclude certain aliens from Section 1226 if they had been arrested, charged, or convicted of enumerated crimes. *Martinez-Elvir*, 807 F. Supp. 3d at 738. These aliens would have otherwise qualified for a bond hearing under Section 1226. But to "read § 1226 [as Respondents do] would ignore recent amendments to § 1226 and render Congress' recent actions entirely superfluous, a result that this Court has long been instructed to avoid." *Rodriquez v. Noem,* 812 F. Supp. 3d 751, 760 (W.D. Mich. 2025). If every alien in the United States could be detained under Section 1225 and denied a bond hearing, the Act is meaningless.

Simply stated, the Court is not persuaded by Respondent's interpretation of the statute.[4] If Respondents seek relief from the INA's plain terms and chosen language, legislative action is the appropriate course. Petitioner is improperly designated as a mandatory detainee pursuant to Section 1225(b)(2)(A). She must be afforded a proper bond hearing consistent with Section 1226.

### B.      Due Process

Petitioner's due process challenge centers on the denial of an individualized bond hearing where the government must demonstrate by clear and convincing evidence that she is a flight risk or danger to the community. (Doc. 1 at 15-16, ¶¶ 79-89.) Respondents do not specifically

---

[4] The Court notes that circuit courts are split on this issue. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Cunha v. Freden*, No. 25-3141, 2026 WL 1146044, 2026 U.S. App. LEXIS 12201 (2d Cir. Apr. 28, 2026); *Castanon-Nava v. United States Dep't of Homeland Sec.*, No. 25-3050, 2026 U.S. App. LEXIS 13044 (7th Cir. May 5, 2026). The Sixth Circuit has not yet addressed the issue. *See Contreras-Cervantes v. Raycraft*, No. 25-cv-13073, 2025 WL 2952796, 2025 U.S. Dist. LEXIS 205416 (E.D. Mich. Oct. 17, 2025), *appeal pending*, No. 25-cv-13073 (6th Cir. Oct. 28, 2025).

address due process.  (*See* Doc. 4.)

The Due Process Clause of the Fifth Amendment applies to all persons—citizens or aliens—inside the United States.  *A.A.R.P. v. Trump*, 605 U.S. 91, 94, 145 S. Ct. 1364, 221 L. Ed. 2d 765 (2025); *Zadvydas v. Davis*, 533 U.S. 678, 687, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).  To determine whether Petitioner's continued detention violates due process, courts apply the three-part balancing test laid out in *Mathews v. Eldrige*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).  The Court must weigh: (1) the private interest affected by government action, (2) the risk of erroneous deprivation of that private interest and the probable "value of any additional safeguards, and (3) the government's interest, including the fiscal and administrative burden the additional safeguards would impose."  *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020) (citing *Mathews*, 424 U.S. at 334-35).

### 1.    Private Interest

The private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention by one's own government."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects."  *Zadvydas*, 533 U.S. at 690.

This factor weighs in Petitioner's favor.

### 2.    Risk of Erroneous Deprivation

The risk of erroneous deprivation is high if detainees are not given bond hearings at all or are subject to constitutionally or statutorily deficient bond hearings.  Individualized bond hearings where the government bears the burden of proof mitigate against this risk.

First, the risk of an erroneous loss of a person's liberty interest is high if an

individualized bond hearing is not held to determine if a person is a flight risk or danger to the community. Without any bond hearing at all, there are no safeguards in place to ensure a person's liberty interests are not violated.

Second, the government must bear the burden of proof at the bond hearing. "The more stringent the burden of proof a party must bear, the more that party bears the risk of an erroneous decision." *Cooper v. Oklahoma*, 517 U.S. 348, 116 S. Ct. 1373, 134 L. Ed. 2d 498 (1996) (quoting *Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 283, 110 S. Ct. 2841, 111 L. Ed. 2d 224 (1990)). "[D]ue process places a heightened burden of proof on the [government] in civil proceedings in which the individual interests at stake . . . are both particularly important and more substantial than mere loss of money." *Id.* (quotations omitted). In fact, in *Marroquin v. Genalo*, the government acknowledged by stipulation that it bore the burden of proof as to both risk of flight and danger to the community. No. 24-cv-6376, 2025 WL 3241161, 2025 U.S. Dist. LEXIS 228854, at *5 (S.D.N.Y. Nov. 20, 2025).

A growing number of cases have reviewed the burden of proof in Section 1226 bond hearings. The vast majority have found the need to reduce the risk of erroneous deprivations of any individual's liberty interest requires an individualized hearing in which the government must demonstrate risk of flight or danger to the community by clear and convincing evidence. *See id.*; *Rodriguez v. Greene*, No. 26-cv-333, 2026 WL 574961, 2026 U.S. Dist. LEXIS 41849, at *40 (N.D. Ohio Mar. 2, 2026) (finding risk or erroneous deprivation "high" where bond hearing was "constitutionally deficient" because it improperly imposed burden on petitioner); *E.V. v. Raycraft*, No. 25-cv-2069, 2025 WL 3122837, 2025 U.S. Dist. LEXIS 220483, at *29 (N.D. Ohio Nov. 7, 2025) ("individualized bond hearing ensures that immigration judges can assess whether noncitizens pose a flight risk or a danger to the community, thereby mitigating the

erroneous deprivation of noncitizens' liberty interests"); *M.T.B. v. Byers*, No. 24-cv-028, 2024 WL 2881843, 2024 U.S. Dist. LEXIS 148118, at *5 (E.D. Ky. Aug. 20, 2024) ("Requiring detainees to prove that they are not a danger and are not a flight risk after the government has already enjoyed a presumption that detention is necessary . . . presents too great a risk of an erroneous deprivation of liberty after a detention that has already been unreasonably prolonged."); *Perez-Perez v. Raycraft*, No. 26-10533, 2026 WL 1121930, 2026 U.S. Dist. LEXIS 91353, at *20 (E.D. Mich. Apr. 24, 2026) ("as a majority of federal courts, including both trial and appellate courts, have decided, the *Mathews* factors establish that due process requires the government to bear the burden of demonstrating that Petitioner is a flight risk or danger to the community to deny bond").

> As one court explained:

> In the context of the Due Process Clause, requiring a particular standard of proof serves to allocate the risk of error between the litigants' and reflects the relative importance attached to the ultimate decision. Thus, the Supreme Court has repeatedly reaffirmed that due process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake . . . are both particularly important and more substantial than mere loss of money. The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state. The Supreme Court, therefore, upheld the application of the clear and convincing standard for civil commitment proceedings because the individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence.

*Soto-Medina v. Lynch*, No. 25-cv-1704, 2026 WL 161002, 2026 U.S. Dist. LEXIS 11113, at *15 (W.D. Mich. Jan. 21, 2026) (citations omitted).  Other courts have decided differently.  *See Diaz v. Garland*, 53 F.4th 1189, 1203-05 (9th Cir. 2022) (discussing the circuit split).

Having considered the Supreme Court's statements about the burden of proof applicable to proceedings that may result in a loss of liberty and the persuasive authority cited herein, this

Court finds that the government must demonstrate by clear and convincing evidence that the detainee presents a flight risk or danger to the community in Section 1226 bond hearings.  This is not a novel conclusion.  As noted in *Rodriguez*, immigration courts put the burden of proof on the government to demonstrate detention was necessary long before the Department of Homeland Security amended its policies.  2026 WL 574961, 2026 U.S. Dist. LEXIS 41849, at *40 (collecting cases in the Sixth Circuit which have held the burden is with the government).

This factor weighs in Petitioner's favor.

### 3. Government Interest

Without doubt, the government has a legitimate interest in detaining noncitizens when necessary to ensure their appearance at future proceedings and protect the public.  *Escobar-Ruiz v. Raycraft*, No. 25-cv-1232, 2025 WL 3039255, 2025 U.S. Dist. LEXIS 215434, at *19-20 (W.D. Mich. Oct. 31, 2025).  The government "also has a 'paramount' interest 'in minimizing the enormous impact of incarceration in cases where it serves no purpose.'"  *Marroquin*, 2025 WL 3241161, 2025 U.S. Dist. LEXIS 228854, at *13 (citing *Black v. Decker*, 103 F.4th 133, 154 (2d Cir. 2024)).  A bond hearing that properly requires the government to prove an individual's risk of flight or danger to others by clear and convincing evidence is minimally burdensome to the government.  The government does not argue otherwise.

This factor weighs in Petitioner's favor.

Because the *Mathews* factors all favor Petitioner, her continued detention without a bond hearing wherein the government bears the burden of proof by clear and convincing evidence is a violation of due process.

### C. Administrative Procedure Act

Petitioner also asserts that Respondents' denial of a proper bond hearing violates the APA. (Doc. 1 at 14-15, ¶¶ 74-78.) To Petitioner, Respondents' recent policy change to classify her and others like her as persons who must be detained pursuant to Section 1225 is arbitrary and capricious. (*Id.* at 15, ¶¶ 76-78.)

It is not clear such a challenge may be presented in a habeas petition. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 500 (5th Cir. 2026) (declining to discuss APA claim asserted by petitioner); *Mendez v. Unknown Party #1*, No. 25-cv-1407, 2025 WL 3522118, 2025 U.S. Dist. LEXIS 254819, at *21 n.5 (W.D. Mich. Dec. 9, 2025) (finding habeas petition improper vehicle to assert an APA claim). What is more, to assert a challenge under the APA, there must be "no other adequate remedy in court." *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 427 (6th Cir. 2016) (citing 5 U.S.C. § 704). Petitioner has not alleged the absence of any other adequate remedy.

Assuming a habeas petition is a proper vehicle for seeking relief for APA violations, the Court declines to do so here because the Court is granting relief for Respondents' statutory and due process violations, namely a proper bond hearing or immediate release. *See Coronel-Hernandez v. Woosley*, No. 26-cv-20, 2026 WL 227011, 2026 U.S. Dist. LEXIS 15672, at *15 n.4 (W.D. Ky. Jan. 28, 2026) (declining to consider APA claim because petitioner received relief sought through INA and due process claims).[5]

---

[5] In her request for relief, Petitioner seeks fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Doc. 1 at 17, para. F.) It is unclear EAJA fees are available in the habeas context. *See Obando-Segura v. Garland*, 999 F.3d 190, 193 (4th Cir. 2021); *Barco v. Witte*, 65 F.4th 782 (5th Cir. 2023); *Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 431 (3d Cir. 2026) (discussing circuit split). Assuming EAJA fees are available, the request is premature. *See* 28 U.S.C. § 2412(d)(2)(G).

**III.    CONCLUSION**

For the reasons stated herein, Petitioner Raquel Hidalgo-Sanchez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) is GRANTED in part and DENIED in part.  **By 5:00 p.m. on Wednesday, May 13, 2026**, Respondents shall either afford Petitioner a bond hearing that comports with the Due Process Clause, Section 1226, and this Order, or they shall release her from custody.


**IT IS SO ORDERED.**


Date:   May 6, 2026

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE